Clifford H. Seabl, J.
The facts in this case justify the statement a lawyer is a necessity and not a necessary evil. The parties, in a remote section of Herkimer County, contracted, by plaintiff agreeing to purchase and defendant agreeing to sell, 26 acres of woodland upon which was a farm building. Instead of each having a lawyer at the time the contract was signed, they called upon a Justice of the Peace to prepare the papers. On January 21, 1950, they signed a contract wherein plaintiff agreed to pay $1,500 at the rate of $20 or more each month, the same to apply on both interest and principal. He also agreed to pay the taxes and insurance. He went into immediate possession. He paid to defendant the taxes and two payments of insurance, the policies standing in defendant’s name. Prior to November 27, 1950, he paid the sum of $240 on principal and interest. On November 27, 1950, while his wife was absent from the premises, the house was completely destroyed by fire. Under the terms of the agreement he was not to be given a deed until the entire purchase price of $1,500 and interest was paid.
The defendant, owner, had deposited a policy of insurance for $2,800 with the First National Bank of Poland as security for the payment of two mortgages, $375 and $240. This insurance was payable to the defendant and First National Bank of Poland. On January 21, 1951, following the fire, the insurance company paid $2,500 to cover the fire loss. The bank deducted the amounts of the mortgages and interest and it may fairly be presumed that the difference, around $1,885, was paid over to the defendant.
The complaint demands judgment compelling defendant to turn over to plaintiff a deed of the property, plus the difference between the amount recovered from the insurance company and the amount unpaid on the principal.
The defendant demands that she be permitted to retain the entire insurance moneys, that plaintiff pay the amount still due on the original contract price, $1,324.44, together with interest thereon from January 21, 1950; in other words, double compensation. She also demands in her counterclaim payment of $350 claimed to be the value of furniture loaned and destroyed through the negligence of plaintiff.
To grant defendant the right to retain the insurance and to compel plaintiff to pay the purchase price, might well be termed inequitable. Had a lawyer been called in he would most certainly have required that the policy be made payable to both vendor and vendee so long as the vendee was himself paying the premiums on the insurance.
*73 The history of the legislation touching this particular situation is interesting. The Law Revision Commission of this State covered the whole field in 1936. (See 1936 Report of N. Y. Law Rev. Comm., pp. 763-780.)
• The result of this report was to approve the essentials of the Uniform Vendor and Purchaser Risk Act, with certain modifications, embodying the “wise policy” of having the party in possession of the property “ care for it at his own peril.” The commission then recommended the passage of present section 240-a of the Real Property Law, known as the Uniform Vendor and Purchaser Risk Act, which provides as follows:
“ § 240-a. Uniform vendor and purchaser risk act.
“ 1. Any contract hereafter made for the purchase and sale or exchange of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:
“ (a) When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid; but nothing herein contained shall be deemed to deprive the vendor of any right to recover damages against the purchaser for any breach of contract by the purchaser prior to the destruction or taking; (2) if an immaterial part thereof is destroyed without fault of the purchaser or is taken by eminent domain, neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract; * * *
“(b) When either the legal title or the possession of the subject matter of the contract has been transferred to the purchaser, if all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby entitled to recover any portion thereof that he has paid;”.
The decision in Brownell v. Board of Educ. (239 N. Y. 369, 373) first definitely set the pattern. There it was held that the benefit of the vendor’s policy “ belonged to the vendor, and the vendee had no claim on the insurance money.” The source of the English and American rule was referred to as resting on the decision in Rayner v. Preston (18 Ch. D. 1). “ Both in the forum and the market place,” wrote the court, “ it is known that the insurance runs to the individual insured and not with the land.”
*74 The discussion in the Law Revision Commission Report considers the conclusion of Professor Samuel Williston, in which the Roman Law is referred to as placing the loss on the buyer, the rule being of great antiquity, possibly of Greek origin.
The commission arrived at the conclusion that the party in possession must care for the property at his peril, making change of possession a determinant factor in shifting risk of loss to the vendee, as at that time the vendor’s insurance would normally end, unless an indorsement on the policy to the contrary were secured. Such burden, the commission urged, could best be imposed by allocating the risk of loss to the vendee when the latter went into possession.
It is unnecessary for this court to decide whether the policy of insurance became void when the contract was entered into and the vendee went into possession. The money has already been paid over by the insurance carrier without objection. It would be palpable injustice, in this court of equity, to let defendant collect the insurance moneys and still compel plaintiff to pay substantially the entire purchase price, the balance of $1,324.44. This would amount to awarding defendant double payment.
The plaintiff takes the position that having paid for the insurance he should have the benefit of it. Such is not the law. The policy stood in the name of defendant alone. The court in the Brownell case refers to the fact that in Millville Aerie v. Weatherby (82 N. J. Eq. 455) the court held that where a purchaser went into possession'he became the equitable owner of the premises, the vendor retaining the legal title simply as trustee and as security for the unpaid balance; that because of this relationship the money accruing on a policy of insurance will, in equity, inure to the benefit of the vendor. “ These reasons may savor of layman’s ideas of equity, but they are not law ”, said our Court of Appeals. “ Insurance is a mere personal contract to pay a sum of money by way of indemnity to protect the interest of the insured.” (Brownell v. Board of Educ., supra, p. 374). The court then went on to say that the vendee has an insurable interest and may protect himself. Here the vendee may have thought he had protection, relying on the fact that he was paying for the insurance. Ignorance of the law is still no excuse.
The record in this case shows, however, that the vendee paid and vendor accepted two $20 payments on the contract after the fire, one December 12 and one on January 21, 1951. Defendant admits these payments. She testified that she told plaintiff at *75 that time if he wanted to stay he could have the property for $300. The vendee replied “ O. K.” Having paid at the time $20 and $20 the following January, this court holds that this constituted an offer and acceptance.
Insofar as defendant’s counterclaim is concerned for personal property belonging to defendant and loaned to plaintiff, of the claimed value of $300, destroyed in the fire because of claimed negligence of plaintiff, this court must find for plaintiff. At best, the delivery and use of this property would constitute a bailment for the benefit of the bailee and over which the bailee, under the facts presented, would be bound to exercise extraordinary care. The evidence discloses that both plaintiff and his wife were absent from the property when it burned. There is nothing in the record to disclose even the slightest neglect on the part of either plaintiff or his wife.
Therefore this court holds that defendant deliver a warranty deed of the premises to the plaintiff upon payment of the balance of $260 agreed upon by the offer and acceptance of the figure of $300 following the fire. No costs to either party. Prepare findings and judgment accordingly.