Howard A. Zeller, J.
Defendant, Providence Washington Insurance Company, moves for summary judgment pursuant to rule 113 of the Rules of Civil Practice in this action brought by plaintiff to recover $7,048.57 allegedly due her for a fire loss under a policy issued by defendant. Plaintiff also moves for summary judgment. There is no dispute as to the signficant facts.
In 1950 plaintiff Elsa Richardson and her husband became record owners as tenants by the entirety of a five-apartment frame dwelling at 808 East Seneca Street, Ithaca, New York. Plaintiff’s husband died in 1956. At the time of their purchase the Richardsons assumed a pre-existing mortgage on the premises and gave an additional mortgage, both in favor of the Ithaca Savings Bank. As of November 28, 1958, the principal balance due the bank on the mortgages was $6,097.71.
On November 28, 1958, Elsa Richardson as the vendor and Bernard Havrilka as the vendee executed a land contract for the sale and purchase of the premises and Havrilka entered in possession.
Under the contract terms, the insurance premiums of the seller’s existing casualty policy on the dwelling were pro rated as of December 1, 1958. The purchaser agreed to maintain insurance against loss by fire on the premises “ for the benefit of the seller and mortgagee ”.
Under the land contract, mortgage payments expressly were to be made by the seller mortgagor, Elsa Richardson. She regularly paid the monthly mortgage payments to September 28,1962.
As of April 17, 1959, defendant insurance company issued Policy No. 995735, as a rewrite, to “ Bernard m. havrilka, purchaser under contract and elsa m. riohardson, as interest may appear ”. This policy contains a standard loss payable to mortgagee clause, and on its face the Ithaca Savings Bank, Ithaca, New York, had been designated as the mortgagee in interest.
The printed standard provisions of the policy contain the following: 11 Mortgagee interests * * * If the insured fails to render proof of loss * * * mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) *596 days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and time of bringing suit. If this company, shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee’s rights of recovery, but without impairing mortgagee’s right to sue; or It may pay off the mortgage debt and require an assignment thereof and of the mortgage.”
Under the heading “Suit” the printed policy provides that “ No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of loss.”
Under the heading “ Subrogation ” the policy states that “ this Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment thereof is made by this Company.”
A fire loss did occur to the premises on September 2,1960. On or about September 6, 1960, Elsa Richardson retained an attorney to represent her regarding the fire loss and claim. Affidavits by her attorney and the defendant insurance company’s Ithaca agent, reveal that upon her attorney’s inquiry concerning'filing a notice of loss the agent told him a notice had been filed the day of the fire and the claim had been referred to the G-eneral Adjustment Bureau of Elmira, New York.
Subsequent negotiations and efforts of the parties and Havrilka resulted among other things in an agreed loss figure of $7,048.57. On January 20, 1961, Havrilka submitted to the defendant insurance company a “ Sworn Statement in Proof of Loss ” setting forth actual damage of $7,048.57 and loss of rents in the sum of $260. Havrilka’s statement describes the loss as being from a fire “ set on the second floor by a Mr. Hoyt who is now confined to prison. ’ ’
A letter written March 7,1961 on behalf of the insurance company to an attorney representing Havrilka, rejected the claim for loss because Havrilka had “misrepresented material facts in the Proof of Loss and in the examination which was taken of him on December 10, 1960 and because your client has not complied with the terms of the policy and the entire policy as to him is void.” It does not appear that a copy of this letter was sent to Mrs. Richardson or her attorney.
The following week Havrilka pleaded guilty to two criminal counts, conspiracy and arson second degree, arising out of the fire of September 2, 1960 at the insured premises. There is no *597 suggestion whatever that Mrs. Bichardson had any knowledge of or took any part in the arson or conspiracy.
On March 14, 1961, Mrs. Bichardson, by attorney, informed the insurance company that Havrilka’s equity in the premises amounted to $4,748.79 with the principal balance due under the contract being $15,251.21 as of March 1,1961.
As of March 20, 1961, the Ithaca Savings Bank was paid the principal sum then due on the mortgages of $5,351.36 by the trustees of the insurance company. The bank assigned the Bichardson mortgages to the trustees for the defendant insurance company, apparently under operation of the loss disclaimer portion of the standard mortgagee clause set out above. The following day the trustees wrote Mrs. Bichardson a letter notifying her of the assignment of the mortgages to them as trustees for the insurance company, and demanding that all future mortgage payments be made by her to them as trustees commencing April 1,1961 and monthly thereafter until paid in full.
The same letter also demanded of Mrs. Bichardson an additional monthly payment of $15.45 as the trustees’ prorata share of subsequent land contract payments from Havrilka to Mrs. Bichardson until the principal sum of $1,697.21, with accrued interest at 5%% be paid in full pursuant to a proposed agreement. The proposed agreement apparently was submitted with the letter although the copy before the court does not so indicate, nor does it indicate that Mrs. Bichardson’s attorney was forwarded a copy of either the letter or the proposed agreement.
The proposed agreement tendered to Mrs. Bichardson the balance of the fire loss proceeds ($1,697.21) upon condition that she repay the trustees that sum with interest out of the monthly payments to be made by Havrilka to her under the land contract. The proposed agreement had the further condition that she assign to the trustees a full participating interest with her in the land contract to the extent of $1,697.21, with a right in the trustees to foreclose the contract and have a receiver appointed upon any payment default by either her or Havrilka under the land contract or the trustees’ proposed agreement. This proposed agreement was never executed.
Although an affidavit by Mrs. Bichardson’s attorney states that on or about April 18,1961, he was advised by the attorneys for the defendant insurance company that they would not honor the claim of the plaintiff, there is no proof that Mrs. Bichardson or her counsel were ever directly notified in writing that the policy was deemed void as to her, or that her claim otherwise was rejected prior to service of defendant’s answer in this action.
*598 By letter dated April 10, 1961, the trustees did notify Mrs. Richardson that they had not received the regular April 1, 1961 payment due the trustees on the mortgage, and demanded payment thereof by April 15. This default appears to have been resolved.
By letter dated August 16, 1961, less than 3 weeks from the toll of the 12 months’ Statute of Limitations under the insurance policy, Mrs. Richardson’s attorney wrote the defendant insurance company demanding that her claim under the policy for loss in the sum of $7,048.57 be satisfied within 5 days by discharge of the mortgage held by the trustees for the insurance company and by payment of balance of the loss to Mrs. Richardson.
This letter rejected the insurance company’s demand for “ an equal participating interest with said Elsa Richardson in the Land Contract of November 28,1958 * * * based upon your claimed right of subrogation ’ ’ — the reference clearly being to the terms of the trustees’ proposed agreement of March 21, 1961. The letter concedes the insurance company’s right of subrogation to the extent of any interest Havrilka had in the property upon plaintiff’s indemnification, and offered to “do anything reasonably required to assure your said legitimate rights and interest therein”. The letter continued that Mrs. Richardson would not “ assign to you her rights to payment or pro-rata payment of the purchase price under said contract except in subordination to her prior right to receive the balance of the contract price due her.”
In the letter, Mrs. Richardson then offered to convey the property to the trustees for the balance due her from Havrilka under the land contract after satisfaction of the mortgages by the trustees. The letter continued to the effect that failure of the insurance company to act within five days would require Mrs. Richardson to foreclose any interests and equities of Havrilka in the property by agreement or otherwise.
By instrument also dated August 16, 1961, Mrs. Richardson and Havrilka (by attorney in fact) entered into an abrogation agreement canceling the land contract and transferring all of Havrilka’s rights, title and interest in the premises to Mrs. Richardson. Under the abrogation agreement Mrs. Richardson waived any claim she may have had against Havrilka for any damages or deficiencies arising from Havrilka’s conceded breach of the land contract in failing to keep the property in good repair.
Specifically excepted in the abrogation agreement was any waiver or release by Mrs. Richardson of the defendant insurance company or its representatives, or of any other person, *599 corporation or entity, and the waiver, release or relinquishment by her of any right otherwise to proceed under any third-party claim she might have.
Defendant insurance company failed to respond to the foregoing letter demanding settlement and Mrs. Eichardson initiated this suit on or about August 31, 1961. Although defendant contends the already existing abrogation agreement would have rendered any response to Mrs. Eichardson’s letter a nullity, there is no indication that the existence of the abrogation agreement was known to defendant within the five-day period. Nor does it follow, as defendant argues, that the abrogation agreement per se abolished Havrilka’s interest in the premises. As well as not, Mrs. Eichardson’s partial intent and purpose could have been to take the assignment and hold whatever interest Havrilka thereby transferred to honor the letter proposal. (See Interstate Ice & Power Corp. v. United States Fire Ins. Co., 243 N. Y. 95, 99.) This is not to say, however, that Havrilka then had any interest in the premises to assign or transfer, or an enforcible lien to surrender.
The defendant insurance company claims by its answer that it has no liability to plaintiff under the policy for the fire loss as the loss was caused by the deliberate acts of the sole principal insured, Havrilka. Defendant argues that defenses existing against Havrilka rendered the policy void as to him so that plaintiff, being merely a nominee or appointee of Havrilka, cannot recover under the policy as her only rights thereunder derived from him. It is conceded that Mrs. Eichardson did have an insurable interest in the property but it is denied that her interest was ever separately or independently insured by the contract in issue.
Defendant would make much of such questions as who actually applied for the policy renewal, who paid the premium and who was the “owner” of the property. As stated in Cross v. National Fire Ins. Co. (132 N. Y. 133, 136): “The learned counsel * * # has argued several interesting questions relating to plaintiff’s title to the land * * *. We do not deem it necessary to consider these questions ”. This is so because “ Both in the forum and the market place it is known that the insurance runs to the individual insured and not with the land ”. (Brownell v. Board of Educ. of Saratoga Springs, 239 N. Y. 369, 374; see Insurance Law, § 170; Real Property Law, § 240-a; Rosenbloom v. Maryland Ins. Co., 258 App. Div. 14.)
Nor does mere payment of the premium necessarily make the policy benefits even available to the one who makes the pay *600 ment, much less render the policy benefits exclusive to the payor, as defendant argues. (Cowan v. Sutherland, 6 Misc 2d 71, 74.)
Discussing insurance coverage, Judge Cabdozo stated in Bird v. St. Paul Fire & Mar. Ins. Co. (224 N. Y. 47, 51): “ The problem * * * is not one of philosophy * * *. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts.”
There is no suggestion or hint that Havrilka misrepresented to or concealed from defendant’s agent or the defendant either the reason or purpose for which the policy was being renewed or the nature of the interests which were sought to be insured and were respectively held by him, Mrs. Richardson and the mortgagee. The face entries on the renewal policy indicates a reasonably full disclosure by the applicant of the relationship of the parties therein named as insured and the land contract. The conclusion is inescapable that Havrilka did in good faith both intend and reasonably attempt to secure full, separate and independent coverage of Mrs. Richardson’s interest in the premises, as the land contract required him to do.
Certainly enough was revealed to defendant upon renewal of the policy to place some burden of further inquiry upon it if there were any possible material points of confusion as to the status of the parties, the nature of their interests sought to have been insured or the type of coverage required under the circumstances of the known contractual relationships. Equity must place upon the insurer either the responsibility for providing a contract fairly meeting the standard and common needs of the applicant where these have been reasonably disclosed or the duty of rejecting the proffered transaction.
The rewrite policy was not taken out by Havrilka for his sole benefit, but was necessarily secured by him pursuant to the land contract “for the benefit of the seller and mortgagee”. That Havrilka could and did at the same time and under the same policy insure his own equity was a collateral benefit to him and secondary to the known and contractually required purpose of the policy — to primarily and independently insure the premises for the benefit of the seller and the mortgagee.
During the period from September, 1960 through most of March, 1961, defendant appears to have dealt with the plaintiff as a principal. The offer of payment, hedged though it was with qualifications and conditions, can be predicated under the policy only upon recognition of the plaintiff as a principal insured. Hor is defendant’s position that plaintiff was not a principal insured consistent with its demand for subrogation, *601 the right to which depends under the policy upon payment of loss to an insured. (Galante v. Hathaway Bakeries, 6 A D 2d 142, 149; see Alexandra Restaurant v. New Hampshire Ins. Co. of Manchester, 297 N. Y. 858.)
Mrs. Richardson was the mortgagor, possessor of substantially the greatest equity in the premises and the legal owner of the property at the time of the fire. The average reasonable man viewing Mrs. Richardson’s copy of the policy would conclude that her interests were fully and separately insured and that other or separate coverage was not required. It is concluded that the manner of designating the insured on the face of the insurance contract — ‘ ‘ Bernard m. havrilka, purchaser under contract and elsa m. Richardson, as interest may appear ”, did constitute plaintiff a separate and independent insured under the renewal policy. Being independently insured, her rights under the policy neither derived from nor were dependent upon Havrilka’s rights. (See Pitney v. Glens Falls Ins. Co., 65 N. Y. 6, 13; Mussey v. Atlas Mut. Ins. Co., 14 N. Y. 79; Merkle v. 110 Glen St. Realty Corp., 282 App. Div. 617, 620.)
Defendant concedes in this instance that should Mrs. Richardson be found to be independently insured, any coverage under the policy of her interests is not diminished or voided by any infirmities or defenses affecting the coverage of Havrilka’s interests. However, defendant contends that Mrs. Richardson as an independent insured cannot maintain her action on the policy because she has failed to perform fully all the conditions of the policy.
Defendant recites that plaintiff failed and refused to execute an assignment of her right of recovery against Havrilka although defendant offered to pay plaintiff the remaining balance of loss after the claim of the mortgagee had been satisfied. Defendant’s conduct and proposals on this point seemed designed to put it in a position of technically having paid out the dollar value of the loss, without paying off the loss, in order to establish its right to subrogation and recoupment. Defendant still asserted the mortgage debt against plaintiff and otherwise proffered only an interest bearing loan, the retirement of which by Mrs. Richardson was to commence immediately. The premises remained unrestored and the damages unindemnified. The settlement agreement proposed by defendant’s trustees thus was an empty offer which completely disregarded long-established New York law that an insurance policy is a “ personal contract to pay a sum of money by way of indemnity to protect the interest of the insured”. (Brownell v. Board of Educ. of Saratoga Springs, 239 N. Y. 369, 374, supra.)
*602 Defendant’s proposal further cast Mrs. Richardson into the role of a pure insurer of payment to it of the value of Havrilka’s existing or prospective interest to the extent of loss although Mrs. Richardson’s rights thereto still were inchoate and legally unresolved. This is a far cry from the insurer’s right under subrogation to recoupment from proceeds of a suit brought by or in the name of an indemnified insured against a third party whose acts caused a loss, whether judgment upon such suit be used to reach an existing equity in the property or other assets of the wrongdoing third-party judgment debtor. (See, e.g., Beasley v. Huntley Estates, 285 App. Div. 887; Barnes & Co. v. Remington Optical Corp., 198 Misc. 746, affd. without opinion 278 App. Div. 943; Leone v. Lohmaier, 205 Misc. 467.)
Defendant finally argues that Mrs. Richardson’s settlement of her cause against Havrilka without defendant’s consent constitutes such a breach of the policy as to bar this action. Defendant contends that the termination of the land contract and delivery of possession of the property by Havrilka to her in August, 1961 caused a forfeiture of Havrilka’s interest in the property to her sole benefit and that she thereby elected to fully satisfy her claim to indemnity by accepting Havrilka’s equity. The defendant’s conclusion is that having once been satisfied and having cut off all defendant’s rights of subrogation against Havrilka, Mrs. Richardson cannot now maintain the present action. Such conclusions do not appear warranted by the facts.
Assuming without so holding that Havrilka possessed an interest potentially allocable to defendant’s recoupment, the defendant here has not even yet placed itself in good faith in a position to seek such an allocation by making an unqualified tender of payment under the policy terms. It must be remembered that from mid-March until starting this action late in August, plaintiff stood faced with actions if not words on defendant’s part which rejected her claim for indemnity. Yet defendant’s right to subrogation under the policy and in law depended upon indemnity paid.
From March, 1961 on, defendant’s approach to and handling of Mrs. Richardson’s claim had a dilatory effect, whether so intended or not, and its conduct must be viewed with one eye on the short Statute of Limitations under the policy which would have cut off her claim on September 2,1961. It does not appear that defendant made any effort to honor its policy by attempting to resolve an apparent conflict over its proposed indemnity and subrogation agreement.
No action taken by Mrs. Richardson in the entire course of negotiations served to close the door on any of defendant’s *603 rights. Not only did her letter of August 16, 1961 indicate her willingness to apply the amount of Havrilka’s payments on principal directly to a settlement by defendant, but the abrogation agreement with Havrilka also put her for the first time in a legally unassailable position to do so. Until the execution of the abrogation agreement, Mrs. Richardson had no unequivocally established right to or control over either Havrilka’s interest or any lien he might have possessed.
Although some of defendant’s arguments derive from such a position, this is not a case where the insurer had in timely good faith tendered indemnity to find its right to subrogation wrongfully denied or defeated by the insured.
Finally, defendant’s proposed settlement and subrogation agreement had the effect of requiring Mrs. Richardson to waive Havrilka’s breach and continue the land contract. The mere existence of insurance does not compel such a result. Nor should defendant be heard to complain that the contract was rescinded without its consent when it chose to ignore completely the letter of August 16, 1961 notifying it of Mrs. Richardson’s intent to necessarily rescind or foreclose Havrilka’s interest and asking for action by defendant in the matter. Compelling factors here undoubtedly were Havrilka’s imprisonment and his resultant physical and financial inability to restore the property and continue the contract payments.
Insofar as the existence and nature of Havrilka’s interest is concerned, the land contract provided that the whole principal balance and any other sums secured by the agreement could be held immediately due and payable at the option of the seller upon any of certain specified conditions being breached by the purchaser. One of these conditions was breached by the purchaser’s willful destruction of the premises by fire and his failure to restore the damage. The land contract made no provision for preservation of purchaser’s interest upon his default under the contract.
We are thus faced with the legal principle that “ In case of executory contracts for the sale of * * * land * * * on which part payments have been made by the buyer, he is not entitled to recover the moneys so paid or any part thereof if he is in default in the performance of his part of the contract # * * without legal excuse ”. (2 Clark, New York Law of Contracts, § 1074, p. 1665; see Real Property Law, § 240-a, [1-b].) Contingent only upon purchaser’s tender of the full balance of the contract price, which could have been demanded upon the breach at the seller’s option under the contract terms, it thus appears that here the purchaser’s interest was forfeited *604 by Ms willful breach, and inured to the seller by operation of both law and the contract.
The subsequent delivery of the property to seller by the purchaser did not cause a forfeiture of Havrilka’s interest to defendant’s detriment. The abrogation agreement and surrender of the property to the seller merely recognized that which had already irretrievably occurred, as Havrilka’s interest had either been extinguished by his own willful acts or abandoned by him when unable to revive it by tender of the full balance of the purchase price after his willful breach of the land contract. It is noted that this privilege of Havrilka’s to redeem was also extended to the defendant by Mrs. Richardson’s letter of August 16,1961, which offered to transfer the premises to it upon defendant’s payment of the principal balance due on the land contract. Acceptance of this offer would have effected the transfer to defendant of the total of Havrilka’s principal payments under the contract. Defendant ignored this opportunity for recoupment.
Mrs. Richardson thereby retained a benefit received by operation of law and contract, or purchased for value by her waiver of a personal claim for damages. This benefit, in either of these forms, had no relation whatever to the insurance contract, and was not a res bargained for by defendant in entering the contract to insure. What fell to Mrs. Richardson is not allocable to any indemnity settlement by defendant. The interest of a purchaser under an executory land contract is something other, and in the event of a breach, sometimes considerably less than the true equity of a mortgagor in the same circumstances, although defendant argues otherwise. What such a purchaser acquires at most is actually a lien enforcible against the seller to the extent of principal payments made when the contract fails without purchaser’s fault. (16 Carmody-Wait, New York Practice, p. 495; Holden v. Efficient Craftsman Corp., 234 N. Y. 437; Elterman v. Hyman, 192 N. Y. 113; see McCreery v. Day, 119 N. Y. 1, 5.) Where the purchaser under a breached land contract is in material fault he is not entitled to restitution of payments made. (2 Clark, New York Law of Contracts, p. 1665; Tiffany Realty Co. v. Estey Constr. Corp., 223 App. Div. 458, affd. 250 N. Y. 546, motion for reargument denied 250 N. Y. 588; Kane Co. v. Jaretzki, 119 Misc. 419.)
Havrilka in fact and in law had no equity in the property and otherwise had no remaining interest which he could assert as a lien against plaintiff or anyone else. Thus nothing of Havrilka’s existed here against which a claim by a third party could attach.
Defendant’s arguments have been persistently preoccupied *605 with the theory that there is a similarity to the point of identity between the law governing these parties and those in the position of mortgagor and mortgagee. Analogous the two situations are, “ But this analogy is not to be pressed too far (16 CarmodyWait, New York Practice, p. 495.) But one point of difference is illustrated by the extinguishment under a land contract of the purchaser’s so-called equity in certain situations such as here. Unrecoupable indemnity facing this defendant and not due to Havrilka’s limited assets, including the loss of the proffered bargain of the value of Havrilka’s payments, was occasioned by its own conduct, laches and breach of its contract.
Despite the multi-faceted problems presented by the facts and the sometimes novel arguments advanced in this case, equity can be substantially done by considering Mrs. Richardson to be the sole insured under defendant’s renewal policy, as Havrilka’s acts rendered the policy void as to him without affecting plaintiff’s insured status. Her status then is that of an insured vendor whose property has been willfully damaged by a defaulting, uninsured purchaser without vendor’s knowledge or connivance in the act or other fault on her part. She is entitled to full indemnity in the sum of $7,048.57 for the damages to the premises caused by the fire on September 2, 1960. (See Palisano v. Bankers & Shippers Ins. Co. of N. Y., 276 App. Div. 523, motion for leave to appeal denied 277 App. Div. 945.)
The actual net recovery from defendant is quite another story as Mrs. Richardson is entitled to be restored to the position she was in on September 1, 1960. Not only indemnity is involved but restitution as well — both with legal interest from the various times of accrual to the date of final settlement hereunder.
In computing Mrs. Richardson’s net recovery defendant is entitled to no allowance for the value of Havrilka’s interest as it became and is in fact and law nonexistent. (See Fields v. Western Millers Mut. Fire Ins. Co., 290 N. Y. 209.)
The Ithaca Savings Bank mortgages should have been paid off in full under its policy by defendant as of September 2,1960, without further assertion of the mortgage debt except as a reduction of the indemnity debt. However, the property was again sold on or about September 28, 1962 by Mrs. Richardson. The new vendee assumed the then remaining balances due defendant’s trustees on the mortgages, Mrs. Richardson having continued to make all the monthly payments due thereon up to that time under protest. Therefore, defendant should be charged with the mortgage balances assumed by the new vendee taking into consideration closing adjustments as of October 1, 1962. Defendant or its trustees are deemed to have purchased the *606 mortgages for its own account. Thus the net indemnity payment due Mrs. Richardson is the loss in the sum of $7,048.57, plus the value of the mortgages assumed by her new vendee, which amounted to a reduction in the sale price and to which mortgages the trustees now stand as mortgagees, plus the value of any unearned premium on the subject insurance contract, but less the principal balance of the mortgages as of September 2, 1960. Legal interest should be paid on this net sum from November 1, 1960, as indemnity was due under the policy no later than 60 days from the loss.
Inasmuch as the mortgages should have been retired as of September 2,1960 (see Hessian Hills Country Club v. Home Ins. Co., 262 N. Y. 189), restitution is due Mrs. Richardson from defendant of the total amount of all mortgage payments made or made by adjustment by plaintiff from September 2, 1960, whether made to the savings bank or the trustees, and up to and including her last payment thereon by closing adjustment hereby established to be as of October 1, 1962. Wherever used, the term mortgage payment means the contract sum, that is, the total payment on principal and interest. Legal interest is due plaintiff on all sums in restitution from the dates each obligation to repay respectively matured (actually the date of each payment) to the date of final settlement hereunder. (Civ. Prac. Act, § 481.) For example, the mortgage payment made by plaintiff on May 1, 1961 should be repaid her with interest from May 1, 1961, as the mortgagee never was entitled to the payment initially.
As the mortgages should have been discharged in full as to Mrs. Richardson, thus removing her of any present or future liability as principal mortgagor, defendant and its trustees should execute to her a full release from any further liability to, recourse from or obligation to it, them, their successors or assigns thereunder.
Defendant also mentioned in argument that Mrs. Richardson is barred from recovery because she never filed notice of claim. Although the need for notice under the facts is doubted (see Insurance Law, § 167, subd. 1, par. [c]), any such requirement was waived by the noted dealings of defendant’s agent with Mrs. Richardson’s attorney.
Defendant’s motion for summary judgment dismissing the complaint should be denied. Plaintiff’s motion for summary judgment should be granted.