161 So.2d 848 (1964)
NATIONAL CASUALTY COMPANY, a corporation, Appellant,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, a corporation, Appellee.
No. E-315.
District Court of Appeal of Florida. First District.
March 19, 1964.
*849 Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
W.A. Swann, Jr., Pensacola, for appellee.
STURGIS, Chief Judge.
Upon stipulated facts, final judgment for the plaintiff, General Motors Acceptance Corporation, hereinafter called G.M.A.C., was entered against National Casualty Company, the defendant-appellant, whose policy of insurance issued to the purchaser of an automobile contained a standard mortgage clause in favor of G.M.A.C. as lienholder, hence this appeal. We affirm.
The policy was issued to James E. Rogers on a 1959 Ford automobile and covered, inter alia, damage arising from collision. It was later endorsed to change the coverage to a 1962 Chevrolet and G.M.A.C. was named as lienholder. The Chevrolet was damaged on December 8, 1961, by the purposeful act of Rogers in running it off the Old Pensacola Bay Bridge into the waters of Pensacola Bay. Rogers had been in default since November 12, 1961, in making payments pursuant to the purchase contract which had been assigned by the seller to G.M.A.C.
Appellant contends, first, that the damage inflicted upon the vehicle is not included *850 within the definition of hazards insured against by the subject contract of insurance; secondly, that the damage thus sustained was specifically excluded from the coverage afforded to plaintiff by the contract of insurance; and third, that plaintiff was not entitled to recover a fee for the services of its attorney herein
The policy defines "loss" caused by collision and "loss" caused other than by collision as follows:
"`loss' means direct and accidental loss of or damage to (a) the automobile, including its equipment, or (b) other insured property;"
The policy contains provisions obligating the insurer as follows:
"Coverage D (1)  Comprehensive  Excluding Collision; (2)  Personal Effects; (3)  Towing and Labor Costs: (1) to pay for loss caused other than by collision to the owned automobile or to a non-owned automobile but only for that amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto; except that such deductible amount shall not apply in the event of total loss or destruction of the entire automobile. For the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion shall not be deemed to be loss caused by collision."
* * * * * *
"Coverage E  Collision: To pay for loss caused by collision to the owned automobile or to a non-owned automobile but only for the amount of each such loss in excess of the deductible amount stated in the Declarations as applicable thereto; provided that in the event the automobile is in a collision with any other automobile insured in the Company, the Company shall pay for all loss to the automobile caused by such collision."
Under the above coverages collision is defined as meaning the "collision of an automobile covered by this policy with another object or with a vehicle to which it is attached." The policy also provides:
"(C) The Named Insured is the sole owner of the automobile described herein except as respects such bailment lessor, conditional vendor or mortgagee or assignee of the bailment lessor, conditional vendor or mortgagee (herein called the lienholder) as is named under Declaration 4. If such lienholder is named, the following conditions apply as respects Coverages D and E.
"(1) loss or damage, if any, shall be payable as interest may appear to the lienholder;
"(2) this insurance as to the interest of the lienholder shall not be invalidated by any act or neglect of the lessee, mortgagor or owner of the within described automobile nor by any change in the title or ownership of the property; * * *."
The damage to the automobile was caused by collision with the side railing of the bridge, with the end railings thereof, and with the water below. We hold that the policy of insurance, and especially the standard mortgage clause under which G.M.A.C. claims, which provides that the interest of the lienholder is not invalidated by any act of the insured, renders the insurer liable to G.M.A.C. irrespective of the acts or neglects of James Rogers.
The parties concede that there is no Florida decision squarely presenting the factual situation here involved. There are several Florida cases, however, interpreting the so-called "standard mortgage clause" as contained in this and other insurance contracts. The courts generally hold that the standard or union mortgage clause here involved operates as an independent contract *851 between the insurer and the mortgagee or lienholder, the terms of which are to be rendered certain by reference to the policy. The principle that the insurer is obligated to pay the mortgagee or lienholder when loss occurs, regardless of any act or omission on the part of the mortgagor or owner defeating a right to recovery on his part, has been applied in a variety of circumstances involving acts or omissions of the mortgagor or owner both before and after the attachment of the mortgage clause. 29 Am.Jur., Insurance, Sections 731, 732.
In the landmark case of Syndicate Insurance Co. v. Bohn (C.A.Neb., 1894), 65 F. 165, 27 L.R.A. 614, 615, the mortgagor had falsely represented that his interest in the mortgaged property was sole and unconditional. The court held that the standard mortgage clause protected the lienholder against such false statements, even though the insurance never became valid as to the mortgagor; and in analyzing the history of mortgage clauses and the reasons for the adoption of the standard mortgage clause said at pages 173, 174 of 65 F. of the opinion:
"We all know that 20 years ago a contract between a mortgagee and an insurance company, like that before us, was novel and rare. At that time the customary method of indemnifying the mortgagee against loss by fire was to indorse upon the policy the words, `Loss, if any, payable to ____, mortgagee, as his interest may appear,' or words of similar import. To-day such an indorsement is rare, and a contract similar to the mortgage clause before us is in general use. Why this change? The reason is not far to seek. The old indorsement made the mortgagee a simple appointee of the mortgagor, and put his indemnity at the risk of every act or neglect of the mortgagor that would avoid the original policy in his hands. Baldwin v. [Phoenix] Insurance Co., 60 N.H. 164; Martin v. [Franklin Fire] Insurance Co., 38 N.J.Law, 140; [State] Insurance Co. v. Maackens, Id. [38 N.J.L.] 564. Indemnity so precarious, so liable to be destroyed by the ignorance, carelessness, or fraud of the mortgagors, was not satisfactory to the mortgagees; and they proceeded to make contracts with the insurance companies similar to that before us, for the purpose of securing indemnity to their interests that should not be affected by any act or negligence of the mortgagors."
In Glens Falls Insurance Company v. Porter, 44 Fla. 568, 33 So. 473 (1902), our supreme court cited with approval Hastings et al. v. Westchester Fire Insurance Company, 73 N.Y. 141, and held that the standard or union mortgage clause in an insurance policy gives to the mortgagee such a separate and independent contractual status toward the insurer as to permit recovery under circumstances and conditions that would defeat a recovery by the mortgagor or owner; and in construing a provision similar to the one contained in the policy here involved, the court held that it operated to protect the mortgagee notwithstanding any act or neglect of the mortgagor or owner of the property insured. See also Piedmont Fire Insurance Company v. Fidelity Mortgage Company of Alabama, 250 Ala. 609, 35 So.2d 352 (1948); Overholt v. Reliance Ins. Co. of Philadelphia, 319 Pa. 340, 179 A. 554 (1935); Martin v. Sun Ins. Office of London, 83 Fla. 325, 91 So. 363 (1922); Fire Association of Philadelphia v. Evansville Brewing Association, 73 Fla. 904, 75 So. 196 (1917). The construction given to the standard mortgage clause applies to both real and personal property covered by the insurance. Richardson v. Providence Washington Insurance Company, 38 Misc.2d 593, 237 N.Y.S.2d 893 (1963); American Union Ins. Co. v. Lowman Wine & Bottling Co., D.C., 101 F. Supp. 20 (1951); Motors Securities Co., Inc. v. Aetna Ins. Co. of Hartford, Conn., 17 So.2d 316 (La. App. 1944). And so appellant's first contention is without merit.
*852 The facts in the recent case of Bennett Motor Company v. Lyon, 14 Utah 2d 161, 380 P.2d 69 (1963), are similar to the case on review. There the owner intentionally destroyed the vehicle. The Utah court held that the loss was "direct and accidental" in so far as the lienholder was concerned and that he was entitled to recover. We follow the Bennett case in holding that the rights of G.M.A.C. herein are not derivative from the rights of the named insured. The contract of the appellee insurer with G.M.A.C. is separate and distinct from that of the insured, Rogers, who is in the position of a third party with regard to the contract between G.M.A.C. and National Casualty Company. Rogers' intentional act resulted in a direct and accidental loss which was covered by the agreement between G.M.A.C. and the insurer, to the same effect as if the insurer had insured G.M.A.C. alone.
In Bennett v. Fidelity & Casualty Co. of New York, 132 So.2d 788 (Fla.App. 1961), this court held that the element of the "unexpected" is an important element in the legal definition of the term "accident." Applying that concept to this case, the loss was unexpected by G.M.A.C. and from its standpoint was clearly accidental. Appellant's second point is without merit.
Appellant presents the novel argument that Rogers' acts constituted a conversion of the subject automobile and thereby relieved appellant of liability. This contention is founded on the following policy provision which is incorporated immediately after and is a part of the above discussed provision whereby "the interest of the lienholder shall not be invalidated by any act or neglect * * * of the owner":
"provided, however, that the conversion, embezzlement or secretion by the lessee, mortgagor or purchaser in possession of the property insured under a bailment lease, conditional sale, mortgage or other encumbrance is not covered under such policy unless specifically insured against and premium paid therefor; and provided, also, that in case the lessee, mortgagor or owner shall neglect to pay any premium due under such policy the lienholder shall, on demand, pay the same."
The contention must be rejected. It is fundamental that insurance policies are construed liberally in favor of the insured and strictly against the insurer to the end that the dominant purpose of indemnity or payment to the insured may be accomplished according to the fair purposes of the contracting parties. An insurer will not be allowed by the use of obscure phrases or exceptions to defeat the purpose for which the policy was procured, and where two interpretations are available the one allowing the greater indemnity will prevail. Appellant's interpretation of the above quoted exclusionary provision of the policy is inconsistent with its undertaking as expressed by the standard mortgage clause and other provisions of the policy.
The above quoted exclusionary provision is patently directed to that portion of the standard mortgage clause having to do with a "change in the title or ownership of the property." The words "embezzlement or secretion," as used in said provision, suggest crimes falling within the general category of theft or larceny, the difference being that the original possession was obtained by lawful means. We are satisfied that the defendant insurer, in using the word "conversion" in connection with the words "embezzlement and secretion" had reference to conversion in the criminal sense rather than as a tort. Section 319.26 (2), Florida Statutes, F.S.A., uses the word "conversion" in that sense. The stipulated intention of James Rogers was to cover up his disappearance by creating the impression that he had been in an accident. There is nothing to indicate that he intended to convert the subject automobile or that what he actually intended to do had any bearing on the interest of G.M.A.C.
Appellant finally contends that G.M.A.C. is not entitled to recover an attorney's *853 fee under Section 627.0127, Florida Statutes, F.S.A. The statute provides for payment of attorney's fees to "an insured" or "the named beneficiary." Having held that the standard mortgage clause creates a separate contract between the insurance company and the lienholder, the latter is an insured within the meaning of the statute. See Travelers Insurance Company v. Tallahassee Bank and Trust Co., 133 So.2d 463 (Fla.App. 1961).
Finding no error, the judgment appealed is
Affirmed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.