**Reginald BELL and Amos Bell**

v.

**RED BALL POTATO COMPANY, INC.**

Supreme Judicial Court of Maine.

Argued Jan. 12, 1981.

Decided June 10, 1981.

William J. Smith (orally), Van Buren, for plaintiff.

Sage, Ayoob & Langley, Richard A. Langley (orally), Fort Fairfield, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS, and CARTER, JJ.

---

1. The parties have made no choice of law issue in this case. In the absence of such issue, we determine and apply Maine law.

CARTER, Justice.

This case presents appeals from the judgments of the Superior Court (Aroostook County) in suits brought by the plaintiffs, Reginald Bell and Amos Bell, against the defendant, Red Ball Potato Company. We deny the plaintiffs' appeal, dismiss the defendant's cross-appeal, and affirm the judgment below.

Reginand Bell and Amos Bell are associated as potato farmers in Caswell. In April 1977, they each contracted to sell potatoes to Red Ball Potato Company for "Fall delivery—Sept/Oct/77." Except for the quantity, the terms of the two contracts were identical.[1] Both contracts specified "85% U.S. 1's."

When the Bells delivered their first load of potatoes on September 17, 1977, Red Ball informed them that their potatoes were not yet mature. Red Ball did not allow them to begin delivery again until September 23. As the Bells delivered their potatoes, Red Ball's employees took a sample for inspection and testing from each truckload and gave the Bells receipts indicating, as the result of such testing, the percentage qualifying as U.S. No. 1 grade. Most of the Bells' loads were determined to be below 85% U.S. No. 1, and the Bells were paid less than their contract price.

In December 1977, the Bells, relying on state law, each filed a complaint in three counts against Red Ball in Superior Court. Count One alleged that Red Ball had breached the contract by failure to pay the contract price. Count Two alleged that Red Ball had breached the contract by re-fusing to accept delivery between September 17 and September 23. Count Three alleged that Red Ball had converted to its own use and profit potatoes that were rejected during the inspection process. The pretrial order joined the two suits for trial and ordered that the case would be tried only on Counts Two and Three.[2]

A jury trial took place in Caribou in January 1980. At the close of the plaintiffs' case, the court granted a directed verdict for the defendant on Count Three, finding that the evidence did not establish the elements of the tort of conversion. The court denied the defendant's motions for a directed verdict on Count Two and the jury returned verdicts awarding damages for the plaintiffs on that Count.

The plaintiffs filed notices of appeal to this Court and the defendant filed a notice of cross-appeal. In October 1980, we remanded the case to the Superior Court because no judgment had been entered on the jury verdicts and because the disposition of Count Three was erroneously entered as a dismissal rather than as a directed verdict. In our order of remand, we stated that the case would be restored to the Law Court docket only in the event that the appellants "file their notice of appeal from the judgment entered pursuant to this order." The Superior Court then entered the appropriate final judgments, and the plaintiffs filed timely notices of appeal in compliance with our order. The defendant, however, failed to file a new notice of appeal. Its cross-appeal is, therefore, not properly before us.[3]

---

1. The contract with Amos Bell specified "Certified Superiors 1000 180# bbls. at $5.50 bbl. to Broadway Warehouse and approximately 6500 Cert. or Table Superiors at $5.00 per 180# bbl. at 85% U.S. 1's." Reginald Bell's contract specified "Certified Superiors 1000 180# bbls. at $5.50 bbl. to Broadway Warehouse and approximately 5000 Cert. or Table Superiors at $5.00 per 180# bbl. at 85% U.S. 1's."

2. At oral argument, the plaintiffs acknowledged that they had abandoned Count One and had intended it to be voluntarily dismissed at pretrial. The language in the pretrial order in effect dismissed Count One.

3. The defendant conceded at oral argument that it had waived its cross-appeal.

It is doubtful whether the defendant's premature notice of appeal could have conferred jurisdiction on the Law Court, because it was filed before any judgment had been entered. Compliance with the requirements of M.R.Civ.P. 73(a) is essential to the Law Court's jurisdiction of a civil appeal, and the time periods set forth in Rule 73(a) are ail based on the entry of judgment pursuant to M.R.Civ.P. 58. See Town of South Berwick Planning Board v. Maineland, Inc., Me., 409 A.2d 688, 689 (1980).

Criminal appeals are governed by M.R. Crim.P. 37(c), which provides that a "notice of appeal filed after verdict or finding of guilty but

The only matter before us for decision is, therefore, the plaintiffs' appeal from the directed verdict on the conversion count. In order to avoid a directed verdict, the plaintiffs had to produce evidence from which the jury could find the elements of conversion:

> The plaintiff must show that he had a general, or a special property in the goods, and the right to their possession at the time of the alleged conversion. . . .

> If the holder acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder is necessary before the withholding becomes a conversion, but if the taking by the holder was wrongful, that taking is a conversion without demand. Where the circumstances show that a demand would be useless, a demand is not necessary.

GMAC v. Anacone, 160 Me. 53, 83, 197 A.2d 506, 524 (1964) (citations omitted).

The plaintiffs argue that Red Ball took possession wrongfully by deliberately using an inspection standard stricter than the federal standard for U.S. No. 1. Both plaintiffs testified that they disagreed with the inspection receipts but that they never complained to Red Ball about the inspections or the prices. The Superior Court did not attempt to resolve the issues concerning the allegedly improper inspection procedure. The court based its directed verdict on a conclusion that the plaintiffs had not met the threshold requirement of showing that they had any interest in the title or any right to possession at the time of the alleged conversion. We agree with that conclusion.

▪ Under the law applicable to the sale of goods, title passes from the seller to the buyer "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." 11 M.R.S.A. § 2–401(2). The evidence is undisputed that the Bells completed physical delivery pursuant to the sale contracts. The evidence does not suggest that the buyer obtained the physical delivery by fraud. Therefore, upon completion of delivery, the sellers no longer had any ownership or right to possession unless there was a "rejection or other refusal by the buyer to receive or retain the goods." 11 M.R.S.A. § 2–401(4).

Under 11 M.R.S.A. § 2–601, if delivered goods do not conform to the contract, the buyer may "(1) Reject the whole; or (2) Accept the whole; or (3) Accept any commercial unit and reject the rest." The Superior Court found no evidence of rejection and concluded that the buyer's acceptance of any part of a truckload was acceptance of an entire commercial unit, pursuant to 11 M.R.S.A. § 2–606(2).

It was undisputed that in Red Ball's dealings with the Bells and other farmers, potatoes were delivered and paid for in truckload quantities and not physically divided into smaller units. Under these circumstances, the court properly determined that a truckload of potatoes was a single "commercial unit" as defined in 11 M.R.S.A. § 2–105(6).[4] Since "[a]cceptance of a part of any commercial unit is acceptance of that entire unit," 11 M.R.S.A. § 2–606(2), the buyer's inspection procedure could not, as a matter of law, have constituted both an effective rejection of certain potatoes and an acceptance of other potatoes in the same truckload. There could have been no rejection, and thus no revesting of title in the sellers, unless the buyer had rejected an entire truckload.

The plaintiffs argue that rejection occurred when Red Ball gave them inspection receipts signifying less than 85% U.S. 1.

before entry of judgment shall be treated as filed on the day of entry of judgment." There is, however, no comparable provision in the civil rules.

**4.** Section 2–105(6) provides that:

"Commercial unit" means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross or carload) or any other unit treated in use or in the relevant market as a single whole.

The Superior Court properly concluded that this procedure did not constitute a rejection. All the evidence indicated that as each truckload of potatoes was delivered, it was combined with potatoes delivered by other farmers without being sorted by grade. These actions, together with the inspection receipts, rather than being evidence of rejection, were instead evidence that the buyer had accepted nonconforming goods, pursuant to 11 M.R.S.A. § 2–606(1)(a).[5]

Therefore, the Superior Court correctly concluded that there was no evidence of any rejection by the buyer. Thus, the seller, upon completion of delivery, had neither ownership nor right to possession and therefore had no cause of action for conversion.

■ While the sellers' evidence of an improper inspection might have been relevant in an action for the price, or as a defense to the buyer's claim for damages, it was not relevant for proving conversion by the buyer. Since the plaintiffs did not create a question of fact for the jury on the issue of conversion, the Superior Court properly directed a verdict against them on that count.

The entry is:

Defendant's cross-appeal dismissed.

Judgment affirmed.

All concurring.

---

5. According to § 2–606(1)(a), "Acceptance of goods occurs when the buyer [a]fter a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity . . . ."