## PENSACOLA DIAGNOSTIC CENTER, etc., et al. v ST. PAUL FIRE AND MARINE INSURANCE COMPANY

Case No. 85-305-CA-01

First Judicial Circuit, Escambia County

November 14, 1985

### OPINION OF THE COURT

NICHOLAS GEEKER, Circuit Judge.

This cause is before the Court upon submission of memoranda by the parties following non-jury trial in which plaintiffs seek declaratory judgment in their favor under a policy of insurance issued to plaintiffs Dr. Angel Williamson and Pensacola Diagnostic Center and Breast Clinic by defendant St. Paul Fire and Marine Insurance Company. Defendant has asserted that the loss sustained by plaintiffs is not covered under the provisions of the policy issued to plaintiffs; or that it is excluded by the insuring agreement.

Having heard testimony, having received evidence, having considered pleadings, affidavits, depositions and pre-trial stipulations of the parties, and having judged the demeanor of witnesses testifying and having resolved the credibility choices to be made, this Court enters the following findings of fact and conclusions of law:

## PRELIMINARY STATEMENT OF THE ACTION

Plaintiff Dr. Angel Williamson is a radiologist who conduct's business under the name of Pensacola Diagnostic Center and Breast Clinic. In the spring of 1984 Dr. Williamson opened a new office site and needed advance state of the art equipment to begin business. Third-party defendant, Accuray Design Group, a supplier of such medical equipment, entered into a contract with Garrett Financial Services, as agent for plaintiff First State Bank, to sell medical equipment to First State Bank. Under the terms of that agreement the parties provided ten per cent of the total purchase price was to be paid upon execution of the sales agreement with the balance of the purchase price due upon delivery of the equipment. No lien or other Uniform Commercial Code security interest in the equipment was to be retained by Accuray and no documents evidencing such an intention were executed. Subsequently, and as part of this overall agreement, Dr. Williamson thereafter purchased an all-risk insurance policy from defendant to cover loss or damage to the equipment being installed on her premises. During the ensuing weeks representative of Accuray began delivery and installation of the equipment in anticipation of the opening day of the clinic. Disagreement arose between Accuray and Dr. Williamson over the terms and methods of installation and payment, and on or about June 5, 1984, agents of Accuray removed a portion of the installed equipment from Dr. Williamson's premises without permission. As a consequence of this action by Accuray's representatives, Dr. Williamson and the other plaintiffs filed their claim of loss with defendant.

## FINDINGS OF FACT

1. Plaintiffs Dr. Angel Williamson and Pensacola Diagnostic Center and Breast Clinic purchased an all-risk and theft policy of insurance from defendant to cover loss or damage to property and equipment located at their place of business and such policy was in effect on June 5, 1984.

2. Third-party defendant Accuray Design Group had entered into an agreement with plaintiffs to furnish medical equipment for a total price of $46,500.

3. Third-party defendant Accuray Design Group received $4,650 as a down payment with the balance of $41,850 due upon delivery of all equipment.

4. On April 9, 1984, before delivery was complete Accuray Design Group received a special interim payment of $17,500.

5. By May 21, 1984, nearly all equipment had been delivered to Pensacola Diagnostic Center and Breast Clinic and installation of

**153**

equipment was underway. A certificate of acceptance was executed on this date.

6. After that date, dispute arose between Dr. Williamson and representatives of Accuray Design Group over the timeliness and manner of installation of the equipment that had been delivered. Consequently, Dr. Williamson withheld final payment to Accuray Design Group due under their contract until she could be satisfied that the equipment was properly installed.

7. On or about June 5, 1984, representatives of Accuray Design Group entered Dr. Williamson's office after business hours under the guise of performing corrective installation work and without plaintiffs' permission removed several key components of the medical equipment that had been purchased from Accuray Design Group.

8. The following day plaintiffs were notified that the removed equipment would be retained by Accuray Design Group pending receipt of final payment.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of and the parties to this action.

2. Plaintiffs Dr. Angel Williamson and Pensacola Diagnostic Center and Breast Clinic were at the time of the incidents complained of insured by the defendant St. Paul Fire and Marine Insurance Company.

3. Plaintiffs Garrett Financial Services and First State Bank are other parties in interest since they are open loss payees under the policy of insurance issued by defendant St. Paul Fire and Marine Insurance Company to plaintiff Dr. Williamson d/b/a Pensacola Diagnostic Center and Breast Clinic. See e.g., Southern Ins. Co. v. First National Bank at Orlando, 237 So.2d 302, 303 (Fla. 4th DCA 1970).

4. By June 5, 1984, plaintiffs had obtained an insurable interest in the equipment under their agreement with Accuray Design Group. Section 672.2-501, Florida Statutes.

5. Notwithstanding the existence of their insurable interest in the equipment removed from Dr. Williamson's premises, plaintiffs must show Accuray Design Group had no right to repossess the equipment in order to recover under the theft provisions of their policy with defendant.

6. Whether delivery was completed and whether title to the equipment had passed are determined by reference to the Uniform Commer-

154

cial Code. The equipment in dispute constitute "goods" under the Code. Section 672.2-105(1), Florida Statutes. The agreement between Accuray Design Group and plaintiffs for payment upon delivery is consistent with existing law. See e.g., Sections 672.2507(1) and 672.2-511(1), Florida Statutes. Such agreement would in part be dispositive of whether Accuray Design Group had a right to reclaim the equipment upon plaintiffs' failure to pay under tender of delivery. Section 672.2-401(2), Florida Statutes, provides that unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest. It is undisputed that between May 21, 1984 and June 5, 1984, the equipment had been delivered to and accepted at Dr. Williamson's premises. Section 672.2-606(1)(2), Florida Statutes. There is no evidence that the sales agreement, either expressly or implicitly, contained an *explicit* provision on term reserving title under payment had actually been accomplished. Thus, title and possession merged in plaintiffs and Accuray Design Group had no enforceable security interest in the equipment. *North Platte State Bank v. Production Credit Association*, 200 N.W.2d 1 (Neb. 1972). See, generally, *Anderson*, Uniform Cmmercial Code, Sections 2-401:49 (3rd Ed.). The subsequent action by representatives of Accuray Design Group in repossessing the equipment and removing it from Dr. Williamson's premises was impermissible and constituted a conversion of plaintiffs' property. *Howard Dodge & Sons, Inc. v. Finn*, 391 N.E. 2d 638, 641 (Ind. 3d D.C.A. 1979). See also, Bell v. Red Ball Potato Co., Inc., 430 A.2d 835, 837 (Me. 1981).

7. The authority of *Hardick v. Hill*, 403 So.2d 1125 (Fla. 5th DCA 1981) is inapplicable because there payment, being by check which was subsequently dishonored, rendered the sale conditional. Section 672.2-511(3) Florida Statutes. In addition it must be noted that in the case *sub judice* a substantial partial payment preceded delivery of the equipment.

8. Under the analysis stated in its order of July 2, 1985, denying plaintiffs' motion for summary judgment, this Court concludes that a "theft" occurred on June 5, 1984, as a result of the equipment unlawfully taken and removed by agents of Accuray Design group from the premises of Dr. Williamson. Since the policy of insurance involved in suit does not define "theft", it is appropriate for this Court to resort to definitions and constructions of "theft" under Florida criminal law. *U.S.F.& G. v. J.D. Johnson Co.*, 438 So.2d 917, 921, (Fla. 1st DCA 1983). This Court has previously determined that a conversion of plaintiffs' property occurred when it was taken from Dr.

**155**

Williamson's office. The act of conversion constitutes an offense of "theft" under the provisions of Section 812.012(2)(d)(1), Florida Statutes (1979). Therefore, plaintiffs have sustained a loss by "theft" covered under their policy of insurance issued by defendant. The Court rejects defendant's argument that the act of repossessing the equipment by Accuray Design Group was done in good faith and should not be considered a theft under Florida law.

9. In light of the foregoing conclusions, the Court finds it unnecessary to decide if the loss sustained by plaintiffs was covered under the all-risk provisions of the policy of insurance issued by defendant.

10. The Court concludes that the evidence is sufficient to support a finding of loss but it reserves jurisdiction to determine the amount of that loss at a later time if the parties cannot agree to a fixed sum.

11. Defendant's motion for directed verdict is denied as to the issues resolved by this memorandum order.

Accordingly, it is

ORDERED that judgment should be entered in plaintiffs' favor and plaintiffs' counsel shall within ten (10) days of entry of this order submit a proposed final judgment consistent with this order.