438 So.2d 917 (1983)
UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant,
v.
J.D. JOHNSON COMPANY, INC., Appellee.
No. AR-224.
District Court of Appeal of Florida, First District.
September 29, 1983.
Rehearing Denied October 19, 1983.
*918 Donald H. Partington of Clark, Partington, Hart & Johnson, Pensacola, for appellant.
Robert D. Bell of Fisher, Bell, Hahn & Schuster and George Phillips, Pensacola, for appellee.
ZEHMER, Judge.
The issue involved on appeal is whether, as a matter of law, an all-risk casualty insurance policy issued by the appellant, United States Fidelity and Guaranty Company (USF & G) provides coverage for a loss suffered by the appellee, J.D. Johnson Company, Inc. We reverse the lower court's order granting summary judgment in favor of appellee and remand for further proceedings.
Appellee, J.D. Johnson Company, Inc. (Johnson), sells heating and air conditioning equipment at wholesale. Wade Padgett, doing business as Pensacola Heating and Air Conditioning, is in the retail heating and air conditioning business. For the past four or five years, Padgett's firm has purchased equipment from Johnson in accordance with the following credit arrangement. Whenever Padgett's firm needed equipment, one of his employees would go to Johnson's warehouse to pick up the specified equipment. Johnson's warehouse employee would fill out a triplicate invoice and a warranty card on which the equipment's serial number was recorded and would give the equipment to Padgett's employee. One copy of the invoice went to Johnson's front office, one copy would be kept in the warehouse, and the final copy would be given to Padgett's employee. At approximately two-week intervals, Padgett would go to Johnson's warehouse and pay off a portion of the oldest equipment invoices. Padgett never paid off the entire bill.
Mr. Brown, president of J.D. Johnson Company, became concerned about Padgett's indebtedness when he discovered invoices with amounts considerably larger than normal. Brown assembled all of the outstanding invoices charged to Padgett's account and contacted Padgett to come in and settle his account. The total amount of the invoices was approximately $76,000. Padgett testified that neither he nor his company purchased all of the equipment shown on the invoices. Padgett stated that approximately $12,000 of the equipment was purchased by his employees for their moonlighting businesses and was improperly charged to Padgett's account. According to Padgett, the remaining $64,000 worth of equipment was unaccounted for.
After Padgett's refusal to pay the outstanding invoices and his denial that he had purchased most of the equipment, J.D. Johnson Company filed a claim for physical loss of the property with USF & G to recover on an all-risk casualty insurance policy.[1] USF & G refused to pay the claim on the ground that the loss was not covered under the policy provisions. Johnson then filed suit against USF & G and the trial court granted Johnson's motion for summary judgment on liability, finding that the *919 loss was covered under the policy provisions.[2]
This non-final order is appealable by USF & G. Rule 9.130(a)(3)(C)(iv), Fla.R.App.P. USF & G also noticed this appeal from the order denying its motion for summary judgment and contends that we should not only reverse but also direct entry of summary judgment in its favor. The non-final order denying summary judgment is not appealable, however, and its propriety will not be determined on this appeal. Rule 9.130(a)(3), Fla.R.App.P.; Aetna Casualty & Surety Co. v. Meyer, 385 So.2d 10 (Fla. 3d DCA 1980); Vanco Construction, Inc. v. Nucor Corp., 378 So.2d 116 (Fla. 5th DCA 1980).[3]
USF & G sets forth two basic arguments for reversal. First, it points out that the insurance policy at issue does not provide coverage for:
Property sold by the named insured under conditional sale, trust agreement, installment payment or other deferred-payment plan after delivery to customers.
USF & G argues that all of the property at issue was sold to Padgett pursuant to a long-standing credit arrangement; therefore, the failure of Padgett to pay his debt is not a loss covered by the policy. USF & G contends that the facts are undisputed that all of the merchandise which is the subject of this lawsuit was delivered to Padgett or his employees in the ordinary course of Johnson's business.
USF & G's second argument relies upon the policy exclusion for losses caused by:
Voluntary parting with title or possession of any property by the named insured or others to whom the property may be entrusted if induced to do so by any fraudulent scheme, trick, device or false pretense.
USF & G argues that this policy language has been uniformly held valid and is applicable in this case because it is undisputed that all of the property in question was voluntarily delivered by Johnson's employees to Padgett or his employees. USF & G cites specifically to Jacobson v. Aetna Casualty and Surety Company, 233 Minn. 383, 46 N.W.2d 868 (1951), and Outwest Bean, Inc. v. National Fire Insurance Co. of Hartford, 514 P.2d 782 (Col.App.Ct. 1973), as support for its position.
Johnson counters USF & G's first argument by pointing out that the uncontroverted evidence in the record clearly discloses *920 that none of the property in question was sold to Padgett pursuant to an authorized credit arrangement; a small portion of the property was obtained in an unauthorized manner by employees of Padgett for their personal use, and the remainder of the lost property disappeared in an unexplained manner. Accordingly, Johnson argues, the policy exclusion regarding credit transactions is inapplicable.
With respect to USF & G's second argument, Johnson states that in order for there to be a "voluntary parting," there must be an existing contractual relationship between the named insured and the third party receiving physical possession of the property. There was no valid relationship between Johnson and those unauthorized persons receiving possession of the property; therefore, there was no "voluntary parting" with such property. Johnson attempts to distinguish the cases cited by USF & G by pointing out that all such cases involved situations where there was a valid customer relationship between the parties involved.
Johnson specifically relies upon the case of Hootstein & Son, Inc. v. Hartford Fire Insurance Co., 3 Mass. App. 718, 323 N.E.2d 919 (1975). In Hootstein, the plaintiff had placed property on a loading platform so that it could be picked up by a particular trucking contractor; but while the employee in charge of the loading dock had temporarily left his position, an imposter purporting to be from the contractor drove away with the property before signing for it. The court held that under these circumstances there was no voluntary parting with possession of the property by the plaintiff. Similarly, Johnson argues, there was no voluntary parting with possession by Johnson in this case because the property was taken by persons not authorized to receive it.
In reply to appellees' arguments, USF & G points out that Hootstein is factually distinguishable from the present case because in Hootstein the third party who received the property took it while the plaintiff's employees were not present and no delivery of the property to the third party took place. USF & G again argues that it is undisputed that all of the property at issue in this case was physically delivered to Padgett or his employees pursuant to the long-standing credit arrangement.
Although both parties have contended in their respective motions for summary judgment that the material facts are undisputed, it is clear that certain key material facts are not agreed upon by the parties. The actual physical disposition of each item of property described in the claim is a critical factual issue which must be determined before any ruling can be made on whether coverage exists under the policy provisions. USF & G says that all of the property was physically delivered by Johnson employees to either Padgett, his brother, or his employees. In support of this statement, USF & G relies on the testimony of certain warehouse employees of Johnson. On the other hand, Padgett's testimony is that only a small portion of the property was actually delivered to Padgett's employees, which property they misappropriated, and that the remainder of the property cannot be accounted for. Based on this testimony, Johnson argues that the property simply disappeared from its warehouse for unknown reasons and, therefore, is a covered loss.
Johnson does not disavow the testimony of his employees; but neither does he disavow the truthfulness of Padgett's testimony because a substantial portion of his argument is in reliance on Padgett's testimony. Unless the parties are willing to disregard Padgett's testimony and stipulate that each piece of equipment was in fact delivered to an agent or employee of Padgett (the record contained little, if any, evidence tracing each piece of property), essential material facts remain in dispute.
Neither party cites any helpful authority on USF & G's argument that the loss is not covered because the property was sold pursuant to a credit arrangement. We believe that the policy provision disclaiming coverage for loss of property sold pursuant to a long-standing credit arrangement necessarily contemplates a valid sale transaction and *921 delivery of the property incident to such sale. Property delivered by Johnson as a result of fraud or misrepresentation would not be pursuant to a valid sale transaction within the meaning of this policy provision. Cf., Security Ins. Co. of Hartford v. Investors Diversified Ltd., 407 So.2d 314 (Fla. 4th DCA 1981). Since Padgett's testimony denies that any valid sale took place, while Johnson's employees testify that each piece of missing equipment was sold and delivered to Padgett or his employees, disputed material facts must be resolved to decide whether this provision is applicable, precluding summary judgment for either party.
In regard to USF & G's second contention, according to the wording of the policy exclusion, a loss will not be covered if it was caused by a "voluntary parting" with "title or possession" and the insured (Johnson) was induced to part with the property by any "fraudulent scheme, trick, device or false pretense." The key issue is whether this exclusion is applicable in a situation where the property is physically delivered to persons who either misrepresent their identity or misrepresent their authority to take delivery of the property on behalf of a third party; or stated another way, can the "parting" be considered "voluntary" when the property is not delivered to the intended purchaser or his authorized agent or employee?
The policy does not define "fraudulent scheme, trick, device or false pretense." It is reasonable to assume, however, that these terms contemplate circumstances or actions that would constitute common law fraud or the criminal offense of obtaining property by false pretenses. The elements of the crime of obtaining property by false pretenses have generally been described as: (1) a false representation by a person of a past or existing fact [in this case, identity or authority]; (2) knowledge by that person of the falsity of the representation; (3) intent to defraud; (4) reliance on the misrepresentation by another party [in this case, Johnson]; and (5) surrender [by Johnson] of the property to the person making the misrepresentation. See Ex parte Stirrup, 155 Fla. 173, 19 So.2d 712 (1944); Paulk v. State, 344 So.2d 304 (Fla. 2d DCA 1977). The elements of common law fraud have been similarly defined, and actionable fraud has been found in situations involving false representations regarding the identity of persons purchasing property. 27 Fla.Jur.2d, Fraud & Deceit, § 34. We construe the policy terms "fraudulent scheme, trick, device or false pretense" as including the circumstances alleged in this case where equipment was intentionally delivered by Johnson's employees to certain persons, even though Johnson was induced to make such delivery by misrepresentations as to that person's true identity or authority to receive such property. Outwest Bean, Inc. v. National Fire Ins. Co. of Hartford, 514 P.2d 782 (Colo. App. 1973). Such "parting," while induced by fraud, is nonetheless "voluntary."
The burden is upon USF & G to prove facts establishing an exclusion as to each piece of property involved. Allstate Ins. Co. v. Coin-O-Mat, Inc., 202 So.2d 598 (Fla. 1st DCA 1967); 31 Fla.Jur.2d, Insurance, § 996. In view of the testimony of Johnson's employees, USF & G presented sufficient evidence to create a question of fact for the jury, making it error to enter summary judgment for Johnson.[4]
The order granting summary judgment is reversed and the case is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] The policy provides:

This policy insures against all risks of direct physical loss subject to the provisions and stipulations herein and in the policy of which this form is made a part.
[2] We take note that the parties' pleadings in this case, being as general as they are, stretch "notice pleading" to its extreme limits. The complaint simply alleges that Johnson had an insurance policy in effect, that it made a valid claim for loss under the policy, and that USF & G refused to pay. The claim is not annexed, no specific property is identified, and no ultimate facts, dates, or anything else, concerning the circumstances of the loss are alleged. The answer admits issuance of the policy, denies the remaining allegations, and, for an affirmative defense, alleges that the loss is not covered by reason of the policy terms and certain exclusions. No specific policy provisions are identified and no ultimate facts are alleged showing that the exclusions relied upon are applicable. Both pleadings are clearly insufficient, and it is impossible to tell from the pleadings what specifically disputed issues are involved.

Nevertheless, no party has questioned the sufficiency of these pleadings. We proceed to decide this case on the issues argued to us by the parties only because their memoranda of law filed with the trial judge and included in the appendix on appeal indicate that the issues were argued below. But we feel compelled to point out that specific issues should be made by the pleadings if they are intended to be appropriately preserved for appellate review. Appellate courts should not be expected to review lengthy memoranda of law filed with the trial judge to determine whether the issues on appeal were properly raised and presented.
In view of our disposition of this appeal, we suggest that specific issues remaining in dispute for trial should be identified in appropriate amended pleadings or a pretrial order entered after proceedings in accordance with Rule 1.200, Florida Rules of Civil Procedure.
[3] USF & G has cited Goodman v. Strassburg, 139 So.2d 163 (Fla. 3d DCA 1962) and Glens Falls Insurance Co. v. Fields, 181 So.2d 187 (Fla. 1st DCA 1966) for the proposition that this court may reverse and instruct the trial court to enter summary judgment in its favor. These two cases are factually distinguishable since they involved appeals from summary final judgments, not non-final orders such as entered in this case. More importantly, these two cases were decided before the present appellate rule was adopted.
[4] On the other hand, if Johnson concedes by stipulation that all of the lost property was actually delivered by his employees to someone claiming to be from Padgett, as was suggested during oral argument, then the trial court may well want to revisit USF & G's motion for summary judgment.