**ST. PAUL FIRE & MARINE INSURANCE COMPANY,**
Plaintiff,

v.

**LUKE READY AIR, LLC,**
**et al., Defendants.**

Case No. 11–CV–80121.

United States District Court,
S.D. Florida,
West Palm Beach Division.

Aug. 1, 2012.

Avery A. Dial, Yelena Shneyderman, Rory Eric Jurman, Fowler, White, Bur-nett, P.A., Fort Lauderdale, FL, for Plaintiff.

Chris J. Mancini, Chris Mancini, Catalina M. Avalos, Tripp Scott, Fort Lauderdale, FL, Carri A. Conlon, Fred C. Begy, III, Chuhak & Tescon, P.C., Chicago, IL, Howard D. DuBosar, DuBosar & Perez PA, Boca Raton, FL, for Defendants.

### OMNIBUS ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on the parties' cross motions for summary judgment **[DE 88, 156, 165, 178]** filed on November 29, 2011, March 9, 2012, March 21, 2012, and March 28, 2012, respectively. Also before the Court is St. Paul's motion to strike portions of Legacy Bank's reply brief **[DE 137]** filed on February 9, 2012. The motions have been fully briefed, and a hearing was held on March 15, 2012. These matters are ripe for adjudication.

## I. Background

### A. The Aircraft Insurance Policy

Luke Ready Air, LLC ("Luke Ready") is a company that owns airplanes used for charter service. On September 30, 2008, Luke Ready obtained a loan from Legacy Bank of Florida ("Legacy Bank") in the amount of $743,000 to finance the purchase of a Beechcraft King Air 200 Aircraft (the "Aircraft"). Luke Ready and Legacy Bank entered into a Security Agreement **[DE 88-1]** designating the Aircraft as se-

curity for the loan. Under paragraph 6 of the Security Agreement, Luke Ready was required to procure and maintain a "hull and liability" insurance policy designating both Luke Ready and Legacy Bank as the parties insured and Legacy Bank as the loss payee. The Security Agreement also requires that the insurance policy include certain endorsements, including one providing that "coverage in favor of [Legacy Bank] will not be impaired by any act, omission, or default by [Luke Ready] or any other person."

Luke Ready ultimately procured the required insurance policy from St. Paul Fire & Marine Insurance Company ("St.Paul"). The Aircraft insurance policy [DE 112–1] consists of the Policy Declarations which designate Luke Ready as the named insured, and the Aircraft Coverage Form, which is made up of four distinct parts: Part 1—LIABILITY COVERAGES; Part 2—HULL PHYSICAL DAMAGES COVERAGES; Part 3—DEFINITIONS; and Part 4—COMMON POLICY CONDITIONS. The liability insurance coverage provided in Part 1 protects Luke Ready against liability for bodily injury and property damages, subject to certain enumerated exclusions. The hull physical damages insurance coverage provided in Part 2 protects Luke Ready against direct physical loss of or damages to the Aircraft resulting from a "Covered Cause of Loss." The Aircraft insurance policy also contains multiple endorsements, including the "Finance or Lease Contract Endorsement" (the "Finance Endorsement"), which amends the Aircraft Coverage Form by adding Legacy Bank as an insured under both the liability and hull physical damages insurance coverages under Part 1 and Part 2. The Finance Endorsement also amends the policy by adding several provisions to the Common Policy Conditions set forth in Part 4.

## B. The Loss

In October 2009, Luke Ready engaged the services of broker Scott MacDonald to sell the Aircraft. In February 2010, a man named Jorge Reynoso Prado expressed an interest in purchasing the Aircraft on behalf of the municipal government of Guadalajara, Mexico. On March 23, 2010, Luke Ready and Reynoso executed an "Aircraft Purchase and Sale Agreement" whereby a Mexican corporation called GDL Aviation, Inc. agreed to purchase the Aircraft from Luke Ready for $640,000. On April 13, 2010, Reynoso presented MacDonald with a "Licitation Order," written in Spanish, as purported proof of his authority to purchase the Aircraft on behalf of the Mexican government.

On or about April 22, 2010, Luke Ready hired two pilots to fly the Aircraft to the Guadalajara airport in order to close the transaction. Upon arrival, Reynoso insisted that certain repairs be made to the Aircraft. On or about April 29, 2010, after the repairs were completed, MacDonald received a payment of $100,000 to his escrow account. MacDonald, believing that he would receive the remaining funds from Reynoso, gave the pilots permission to return to the United States. On May 19, 2010, Reynoso advised MacDonald that he had wired the rest of the purchase money, however the wire transfer numbers provided by Reynoso turned out to be invalid. Luke Ready subsequently learned that the Aircraft had been removed from the Guadalajara airport without its permission. Luke Ready hired a Mexican attorney, Sergio Flores, to report the theft of the Aircraft to the Mexican government to request an investigation. When Flores contacted Reynoso to determine the whereabouts of the Aircraft, Reynoso told Flores that he did not know where the Aircraft

was. The Aircraft was never returned to Luke Ready, and Reynoso never paid the $540,000 balance. The location of the Aircraft is currently unknown.

On September 15, 2010, Luke Ready submitted a sworn proof of loss to St. Paul and made a claim on the Aircraft insurance policy for $1.1 million. The proof of loss states that the loss was caused by "theft and subsequent confiscation, seizure, restraint and/or detention under the order of a government, public or local authority." According to Luke Ready, the Aircraft was stolen from the Guadalajara airport in Mexico and then flown to Venezuela where it was confiscated by the Venezuelan government after drugs were found in the Aircraft.

On January 31, 2011, St. Paul initiated the instant action seeking a declaratory judgment against both Luke Ready and Legacy Bank. St. Paul takes the position that neither Luke Ready nor Legacy Bank is entitled to payment because the loss falls within the policy's "conversion" and "voluntary parting" exclusions. According to St. Paul, Reynoso never had authority from the Mexican government to purchase the Aircraft, and he tricked Luke Ready into leaving the Aircraft in his possession by presenting MacDonald with a fake Licitation Order. Luke Ready filed a counterclaim against St. Paul for breach of contract, asserting that the loss is covered by the policy's "theft" provisions, and by the "Limited War Risk Physical Damage and Extortion and Hijacking and Confiscation Extra Expense Coverage Endorsement" (the "War Risk Endorsement"), which covers physical loss or damage resulting from "[c]onfiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title, use by, or under the order of any government, public or local authority,

whether civil, military, or de facto." Luke Ready claims damages of $1.1 million, the insured value of the Aircraft under the policy. Legacy Bank has not filed any counterclaims against St. Paul.

## II. The Parties' Arguments on Summary Judgment

While Luke Ready does not readily admit that Reynoso was behind the theft, Luke Ready does not dispute that the Aircraft was indeed stolen. Luke Ready asserts only that the transaction with Reynoso was never completed, and that the Aircraft was removed from the Guadalajara airport without its permission. Therefore, according to Luke Ready, the loss is covered because "theft" is specifically included in the policy's definition of "total loss." As an as an alternative basis for recovery, Luke Ready argues that the loss is covered by the War Risk Endorsement because it was seized by the Venezuelan government after it was stolen.

Legacy Bank also argues that the loss is covered by the Aircraft policy's theft provisions and the War Risk Endorsement. Legacy Bank further argues that the Finance Endorsement constitutes a separate insurance agreement with St. Paul, and that it is therefore entitled to payment regardless of whether Luke Ready's claims are subject to exclusion. Alternatively, Legacy Bank argues that even if the exclusions in the main policy do apply to its claims, St. Paul has failed to meet its burden of proving the asserted exclusions. Legacy Bank seeks summary judgment against St. Paul for $683,514.23, the full balance of the Aircraft loan as of the date Luke Ready submitted the proof of loss.

With respect to the coverage issues, St. Paul argues that the Finance Endorse-

ment does not constitute a separate insurance agreement, and that both Luke Ready's and Legacy Bank's claims are subject to the policy's "conversion" and "voluntary parting" exclusions. St. Paul alternatively argues that Legacy Bank's loss is excluded under the Finance Endorsement's Common Policy Conditions because it caused, contributed to, and/or knowingly condoned the acts which caused the loss. St. Paul further argues that Legacy Bank is not entitled to summary judgment because it is not a lawful party to this action, and because Luke Ready has continued to make payments on the loan. Therefore, according to St. Paul, Legacy Bank has not suffered any damages and its claims are not ripe.

## III. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden shifts to the nonmoving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587, 106 S.Ct. 1348 (citing Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

## IV. Discussion

### A. Procedural Issues and Motion to Strike

Legacy Bank has requested that the Court deem admitted the statement of material facts submitted with its motion for summary judgment because St. Paul's opposing statement fails to comply with the Local Rules for this District. Local Rule 7.5 provides, in relevant part:

Statements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant, but need not repeat the text of the movant's paragraphs. Additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts; the movant shall use that numbering scheme if those additional facts are addressed in the reply.

S.D. Fla. L.R. 7.5(c). St. Paul's opposing statement of material facts merely sets forth its own version of the facts which do not correspond with the order and numbering scheme used by Legacy Bank. Accordingly, the material facts set forth in Legacy Bank's statement are deemed admitted to the extent that they are supported by record evidence. *See id.* 7.5(d). Legacy Bank's statements which constitute conclusions of law, such as its interpretation of the insurance policy, are not deemed admitted.[1]

St. Paul's motion to strike objects to certain portions of Legacy Bank's reply brief on the grounds that it impermissibly raises new arguments, namely that the voluntary parting and conversion exclusions are inapplicable, and that the alleged seizure by the Venezuelan government is covered under the War Risk Endorsement. Although these arguments were not raised in Legacy Bank's initial motion, the Court finds that Legacy Bank's reply appropriately responds to the arguments raised in

St. Paul's opposition brief. In any event, St. Paul has had ample opportunity to address these "new" arguments in its own motion for summary judgment, which was filed after Legacy Bank's reply. St. Paul's motion to strike is therefore denied.

**B. Ripeness of the Issues**

 "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Id.* "The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* "Courts must resolve 'whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.'" *Id.* "Consistent with the 'cases' and 'controversies' requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an 'actual controversy.'" *Malowney v. Fed. Collection Deposit Group,* 193 F.3d 1342, 1347 (11th Cir.1999). "Based on the facts alleged, there must be a substantial continuing controversy between two ad-

---

1. Legacy Bank also asserts, without requesting any relief, that St. Paul's opposition brief violates Local Rule 7.1(c) which limits an opposing memorandum of law to twenty pages. Under Local Rule 7.5(c), the opposing party is also permitted to submit an opposing statement of material facts of up to ten pages. Since the first seven pages of St. Paul's 24–page brief contain its statement of facts, the Court finds that St. Paul has not violated the page limits prescribed by the Local Rules.

verse parties." *Id.* "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred." *Id.* "Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.*

■ The primary issue raised by the parties' cross motions for summary judgment is whether the loss of the Aircraft is covered by the Aircraft insurance policy, *i.e.* whether defendants are entitled to payment from St. Paul. Adjudication of this matter will not require the Court to issue an advisory opinion about the parties' rights and obligations should a particular event occur at some time in the future—the loss has already occurred. The Court thus has jurisdiction to issue a declaration as to whether the loss is covered by the policy, regardless of whether a claim for payment has been filed. *See Nat'l Union Fire Ins. Co. of Pennsylvania v. Carib Aviation, Inc.,* 759 F.2d 873, 875 (11th Cir.1985). The purpose of the Declaratory Judgment Act is to provide a "means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." 10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2751 (3d ed.).

Furthermore, the fact that Luke Ready has continued to make payments on the loan does not preclude the Court from granting summary judgment in favor of Legacy Bank.[2] Luke Ready's default on the loan is not a condition for payment under the insurance policy. If the loss is covered, then Legacy Bank has indeed been damaged through St. Paul's breach of the insurance agreement. In any event, Legacy Bank has not asserted any counterclaims in this action. The Court is thus powerless to order St. Paul to issue payment to Legacy Bank, and a grant of summary judgment in favor of Legacy Bank would merely result in the dismissal of St. Paul's claims. In sum, the Court finds that all claims asserted in this action are ripe for adjudication. The Court therefore has jurisdiction to rule on the parties' motions for summary judgment with respect to those claims.

## C. The Parties' Rights and Obligations Under the Insurance Policy

■ The interpretation of an insurance contract is a matter of law to be decided by the court. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985) (citing *Smith v. State Farm Mut. Auto. Ins. Co.,* 231 So.2d 193, 194 (Fla.1970)).[3] "Under Florida law, an insurance policy should be construed in its entirety and given the construction

2. The Court is confused by St. Paul's ripeness arguments, which seem to be directed toward Legacy Bank's *motion* for summary judgment. Challenges made on the basis of ripeness apply to claims rather than individual motions. The Court cannot imagine a situation where the plaintiff's claims are ripe, but the defendant's motion for summary judgment regarding those same claims are not. The Court is even more confused by St. Paul's argument that Legacy Bank is not a lawful party to this

action. St. Paul initiated this action and named both Luke Ready and Legacy Bank as defendants. As such, Legacy Bank is entitled to assert a defense against St. Paul's claims, which includes moving for summary judgment.

3. The parties agree that Florida substantive law controls in this diversity action. *Trans Coastal Roofing Co., Inc. v. David Boland, Inc.,* 309 F.3d 758, 760 (11th Cir.2002) (citing

which reflects the intent of the parties." *Id.* It is well-settled that when the contractual language is clear and unambiguous, the actual language used in the contract is the best evidence of parties' intent, and the contract terms will be given their plain meaning. *Rey v. Guy Gannett Pub. Co.,* 766 F.Supp. 1142, 1146 (S.D.Fla.1991) (citing *Hurt v. Leatherby Ins. Co.,* 380 So.2d 432 (Fla.1980)). "When the language of a policy is unclear or confusing, the language must be construed against the insurer." *Gulf Tampa Drydock,* 757 F.2d at 1174. "However, ambiguity exists in an insurance policy only when its terms make the contract susceptible to different reasonable interpretations, one resulting in coverage and one resulting in exclusion." *Id.* at 1174–75. "In other words, a court is not free to rewrite an insurance policy or add meaning to it that really is not there." *Carib Aviation, Inc.,* 759 F.2d at 876.

### a. Coverage Under the Main Policy

The hull insurance portion of the Aircraft policy (Part 2—Hull Physical Damages Coverages) provides, in relevant part:

**Section 1—Coverages**

[St. Paul] will pay for direct physical damage of or damage to Covered Property [the Aircraft] caused by or resulting from a Covered Cause of Loss.

**1. Covered Causes of Loss**

Covered Causes of Loss means risks of direct physical loss unless the loss is:

a. Excluded in Section 2—Exclusions;

b. Excluded or limited in the Declarations or by endorsements to **Part 2—HULL PHYSICAL DAMAGES COVERAGES.**

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58

There is no dispute that there has been a direct physical loss of the Aircraft—the Aircraft is nowhere to be found. Because the Aircraft policy covers all risks of loss except those specifically excluded by policy, St. Paul has the burden of proving that the loss "arose from a cause which is excepted." *Carib Aviation, Inc.,* 759 F.2d at 875. The "conversion" and "voluntary parting" exclusions asserted by St. Paul provide as follows:

**Section 2—Exclusions**

. . .

3. We will not make pay for the loss or damage caused by or resulting from any of the following:

. . .

e. Wrongful "conversion" . . . of the "covered aircraft."

. . .

l. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, device or false pretense.

The Aircraft policy's special definitions section provides:

"Conversion" means taking property of others, and assuming the rights of ownership and control in the property, either permanently or for an indefinite period of time, without permission of the owner.

■■■ All evidence points to the fact that Reynoso conned Luke Ready into turning over the Aircraft. Certainly, if the Licitation Order relied on by MacDonald is fraudulent and Reynoso was not in fact an authorized agent of the Mexican govern-

S.Ct. 817, 82 L.Ed. 1188 (1938)).

ment, the Aircraft policy's voluntary parting exclusion would apply to preclude coverage of Luke Ready's claims. *See U.S. Fid. & Guar. Co. v. J.D. Johnson Co., Inc.,* 438 So.2d 917, 921 (Fla.Dist.Ct.App.1983). Luke Ready, however, in an apparent attempt to avoid application of the voluntary parting exclusion, refuses to affirmatively acknowledge Reynoso's role in the theft. Luke Ready admits only that the Aircraft was stolen by *someone,* that it was subsequently taken from the Guadalajara airport and flown to Venezuela without Luke Ready's permission, and that the Aircraft has not been returned. The Court finds that this conduct falls within the policy's clear and unambiguous definition of "conversion," regardless of whether Reynoso was involved. *See Carib Aviation, Inc.,* 759 F.2d at 878 (the essence of conversion is the wrongful deprivation, and not the acquisition of the property); *Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc.,* 481 So.2d 501, 503 (Fla.Dist.Ct.App. 1985).

Luke Ready's attempt to distinguish between a "theft" and a "conversion" in order to find coverage and avoid exclusion is unavailing. Contrary to Luke Ready's interpretation of the policy, "theft" of the Aircraft does not constitute a covered cause of loss. While it is true that the policy's definition of "total loss" includes theft of the Aircraft, it is clear that whether or not the loss constitutes a "total loss,"

as opposed to a "partial loss," affects only the *amount* of payment as set forth in the coverages conditions in Section 5, and has nothing to do with the scope of coverage set forth in Section 1.[4] In other words, Luke Ready is entitled to payment only if the loss is a *covered* "total loss" or a *covered* "partial loss," which in this case simply means that the loss is not subject to any of the policy's exclusions. Since Luke Ready has essentially admitted that the Aircraft was converted (whether by Reynoso or someone else), the loss is not within the scope of coverage provided by the policy, and Luke Ready is not entitled to payment.

### b. Coverage under the Finance Endorsement

The Finance Endorsement, amongst other things, adds the following condition to the Aircraft policy:

> The coverage provided by this policy to [Legacy Bank] will not be invalidated by any act or omission of any other person or organization which results in a breach of any *term or condition* of this policy, provided that [Legacy Bank] has not caused, contributed to, or knowingly condoned, the act or omission.

 The Court agrees with Legacy Bank in that this language constitutes a breach of warranty endorsement. *See, e.g., Sec. Ins. Co. of Hartford v. Comm. Credit Equip. Corp.,* 399 So.2d 31 (Fla.

---

4. Paragraph 7 of Section 5—Hull Physical Damages Coverage Conditions, provides the conditions for valuation of the Aircraft and the amount of payment in the event of a loss, depending on whether the loss is a "total loss" or a "partial loss." "Total loss" and "partial loss" are defined by the Aircraft policy as follows:

"Total loss" means any physical damage loss for which the cost to repair when added to the "salvage" value equals or exceeds:

a. The Limit of Insurance specified in the Declarations for a "scheduled aircraft"; or
b. The actual cash value of any other Covered Property. Theft of the property or disappearance of the entire aircraft is considered a total loss.

"Partial loss" means any physical damage loss which is not a "total loss."

Dist.Ct.App.1981) (finding a breach of warranty endorsement based on similar language); *see also Bernstein v. New Beginnings Tr., LLC,* 988 So.2d 90, 96 (Fla.Dist. Ct.App.2008) ("Despite the labels on the documents, it is the substance of the transaction and the real intent of the parties that controls.").[5] On the other hand, the Court does not agree with Legacy Bank's assertions that the exclusions in the main policy do not apply to its claims. Under Florida law, a breach of warranty endorsement, also known as a loss payable clause, functions to "protect a loss payee from losses due to acts of the named insured that arise out of a *breach of the warrant and covenants* between the parties." *Crain Press, Inc.,* 481 So.2d at 503 (emphasis added). A breach of warranty endorsement does not, however, create coverage where none exists. While it is true that Legacy Bank's claims do not depend on whether Luke Ready is entitled to recovery, the loss must still be within the description of the coverage afforded under agreement and not subject to exclusion. 31 Fla. Jur. 2d Insurance § 2466 (citing *Crain Press, Inc.,* 481 So.2d 501; *Comm. Credit Equip.,* 399 So.2d 31).

Legacy Bank argues that the loss is a covered theft pursuant to the following provisions of the Finance Endorsement:

> In the event of a covered "total loss" to covered equipment [the Aircraft], we will make payment to the contract party [Legacy Bank].

> In the event of a covered "partial loss" to covered equipment [the Aircraft], we will make payment (net of any applicable deductible) to such persons or organizations as may be necessary to repair the equipment. . . .

As discussed *supra,* these provisions are merely conditions for payment and have no bearing on the scope of coverage. The Finance Endorsement amends the main policy to add certain conditions, but it does not alter or limit the policy's coverages or exclusions. The Court thus finds that the coverages and exclusions in the main policy are part of the insurance agreement between Legacy Bank and St. Paul. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Care Flight Air Ambulance Serv., Inc.,* 18 F.3d 323, 329 (5th Cir.1994). *Cf. Comm. Credit Equip.,* 399 So.2d at 34. Accordingly, Legacy Bank is also not protected against losses caused by conversion.[6]

#### c. Coverage under the War Risk Endorsement

In the absence of any language which limits or precludes application of the conversion exclusion, the Court need not determine the issues pertaining to coverage under the War Risk Endorsement. Coverage terminated upon conversion of the Aircraft, and it cannot be revived even if the subsequent seizure by the Venezuelan government falls within the War Risk En-

---

**5.** The fact that Luke Ready rather than Legacy Bank paid the insurance premiums is inconsequential. St. Paul has not provided nor is the Court aware of any authority that a breach of warranty endorsement is invalid where the mortgagee requires the debtor to obtain and pay for coverage.

**6.** Whether or not Legacy Bank "caused, contributed to, or knowingly condoned" the *loss* is irrelevant. The breach of warranty endorsement provides that, in the event Luke

Ready breaches a term or condition of the policy, Legacy Bank's right to payment will not be affected so long as Legacy Bank did not cause, contribute to, or knowingly condone the *breach.* In this case, St. Paul argues that both defendants are precluded from recovery because the loss is subject to exclusion, not because Luke Ready breached the policy.

dorsement's description of coverage. *See Care Flight Air,* 18 F.3d at 329 (no coverage under war risk endorsement where losses due to conversion were excluded under the main policy, and confiscation of the aircraft by Colombian government was subsequent to the conversion).

## V. Conclusion

In sum, the Court finds that the loss is subject to the Aircraft policy's conversion exclusion, and that this exclusion applies to preclude both Luke Ready's and Legacy Bank's claims for payment. St. Paul is thus entitled to judgment as a matter of law.

The Court has carefully considered the motions, responses, replies, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that

1) St. Paul's motion to strike **[DE 137]** portions of Legacy Bank's reply brief is **DENIED;**

2) Legacy Bank's motion for summary judgment **[DE 88]** is **DENIED;**

3) St. Paul's motion for summary judgment against Legacy Bank **[DE 156]** is **GRANTED;**

4) St. Paul's motion for summary judgment against Luke Ready **[DE 165]** is **GRANTED;** and

5) Luke Ready's motion for summary judgment **[DE 178]** is **DENIED.**

Final judgment will be entered by separate order.